IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: <br> Dale Lee Jansma, <br><br> **Debtor** <br> Ronald J. Filian <br><br> **Plaintiff,** <br><br> Vs. <br><br> Dale Lee Jansma, <br><br> **Defendant** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 7 <br> Case No. 09 BK 07071 <br> Hon. Pamela S. Hollis <br><br><br><br> Adversary Proceeding <br> No. 09 AP 00444 |

## MEMORANDUM OPINION

This matter comes before the Court on Dale Lee Jansma's motion to dismiss Count IV of this adversary proceeding for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), made applicable via Fed. R. Bankr.P. 7012. The underlying complaint seeks a finding that Defendant Jansma's debt to Ronald J. Filian is nondischargeable under 11 U.S.C. § 523(a)(19). The parties were provided with an opportunity to respond and reply, and they did so timely. The Court reviewed the complaint and the papers filed, and for the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

All well-pleaded factual allegations set forth in the complaint are taken as true for purposes of deciding a motion to dismiss.

On or about August 21, 2007, Jansma contacted Filian to inquire about a short-

1

term loan. After an inquiry from Filian as to the nature and necessity of the loan, Jansma stated that his money was all tied up, that other investors were not able to provide any additional capital and that Jansma was short on finances for his business ventures.

On or about October 11, 2007, Jansma made another request to Filian for a personal loan in the amount of $100,000.00. Filian agreed to loan the money to Jansma in exchange for a promissory note secured by a piece of real estate that Jansma represented that he owned free and clear, valued at $150,000. The property, at 3526 Lake St., Lansing, Illinois, Jansma indicated, would cover the promissory note if he could sell it prior to the maturity date of the note, November 28, 2007.

Four days later, Jansma signed the promissory note and delivered it to Filian. The note called for a lump sum of principal ($100,000.00) and interest ($1,233.00) for a total of $101,233.00 due no later than November 28, 2007. The note also provided that in the event of default, Filian could recover all costs of collection, including but not limited to reasonable attorney fees, as well as a late interest penalty of $27.40 per diem.

Jansma received the $100,000.00 in two checks from Filian. The first for $70,000.00, made out to Jansma Builders, and the second for $30,000.00, made out to Dale Jansma, personally.

The promissory note matured on November 28, 2007 and Jansma failed to pay the amount of $101,233.00. On November 29, 2007, Filian issued a written demand and notice of default. Any and all attempts to cure the default on the promissory note failed.

On January 30, 2008, Filian filed a verified complaint in the Circuit Court of Cook County. Judge Delort, sitting judge in the Circuit Court of Cook County, Chancery Division, presided over the matter. After Jansma failed to appear on January 12, 2009,

Judge Delort entered a default judgment against him for $514,193.20 with the following findings:

> 1. The Defendant, Dale Jansma obtained money from the Plaintiff [Ronald Filian] under false pretenses, namely that the Defendant would repay the Plaintiff the sum of $107,096.60 by November 28, 2007.
>
> 2. The Defendant, Dale Jansma intentionally misrepresented to the Plaintiff that the title to the property at 3526 lake St., Lansing IL which was used as security for the loan, was free and clear of encumbrances. Accordingly, the Defendant incurred damages in the amount of $300,000.00.
>
> 3. The Defendant intentionally defrauded the Plaintiff by making false statements that the Defendant was able to repay the Plaintiff by November 28, 2007. Accordingly, the Defendant incurred damages in the amount of $300,000.00.
>
> 4. The Plaintiff reasonably relied on the Defendant's misrepresentation and intentionally fraudulent statements and was damaged as a result of that reliance.

After announcing his findings Judge Delort ordered Jansma to pay the following amounts:

> Count II - $107,096.60, compensatory damages;
>
> Count III - $107,096.60, actual damages; and
>
> Count IV - $300,000.00, actual damages.
>
> Judgment for court costs and attorney's fees of $64,552.00 is also awarded in favor of plaintiff and against defendants.

Simultaneously, the State of Illinois, Office of the Secretary of State, initiated proceedings against Jansma for violation of the Illinois Securities Act.

A Temporary Order of Prohibition was issued by the Secretary of State on January 13, 2009 and a Final Order of Prohibition was entered on February 13, 2009. The Final Order of Prohibition read:

1. Respondent Dale Jansma ("Dale Jansma"), a natural person, has a last known address of 946 Old Farm Rd, Dyer, Indiana 46311.

2. Respondent Jansma Builders Inc. ("Jansma Builder") is an Indiana Corporation and maintains a business location at 946 Old Farm Rd., Dyer, Indiana, 46311.

3. Dale Jansma offered and sold Promissory Notes of Jansma Builders to Illinois Residents in excess of one million dollars ($1,000,000.00).

4. The Promissory Notes offered and sold by Dale Jansma promised interest rates between ten (10) percent to thirty (30) percent interest per annum.

5. Dale Jansma secured the Promissory Notes with real property; however the Promissory Notes far exceeded the value of the real property.

6. Several of the Promissory Notes secured by Dale Jansma were erroneous property addresses.

7. The activities described above constitute the offer and sale of a note and therefore a security as those terms are defined in Section 2.1, 2.5 and 2.5a of the Illinois Securities law of 1953 [815 ILCS 5/1 et seq].

8. Section 5 of the Act provides, *inter alia*, that all securities except those exempt under Section 3 or those offered or sold in transactions exempt under Section 4 "shall be registered either by coordination or by qualification prior . . . to their offer or sale"

9. Respondents failed to file with the Secretary of State an application of registration of the securities described above required by the Act and as a result, the security was not registered pursuant to Sect 5 of the Act prior to its offer in the State of Illinois.

10. Section 12.A of the Act provides, *inter alia*, that it shall be a violation for any person "to offer or sell any security except in accordance with the provisions of the Act"

11. Section 12.D of the Act provides, *inter alia*, that it shall be a violation for any person "to fail to file with the Secretary of State any application, report or document required to be filed under the provisions of the Act or any rule or regulation made by the Secretary of State pursuant to the Act"

12. By virtue of the foregoing, Respondents violated Sections 12.A and 12.D of the Act.

## LEGAL DISCUSSION

In the Supreme Court's most recent discussion of the standard applied to a motion to dismiss, the Court started "by taking note of the elements a plaintiff must plead to state a claim. . . ." *Ashcroft v. Iqbal,* 129 S. Ct 1937, 1947 (2009). In this instance, the motion to dismiss presents the Court with a case of first impression, which requires an extended discussion of Congress's intent and purpose in adopting § 523(a)(19) of the Bankruptcy Code. The foundation of any statute is, of course, its text, which is where the Court begins its discussion.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-....

(19) that--

(A) is for--

> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from--

> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
> (ii) any settlement agreement entered into by the debtor; or
>
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

In his Motion to Dismiss, Jansma argues that Filian fails to meet subsection (B) of § 523(a)(19) because the Illinois State Court judgment does not have a preclusive effect in this court and the Order of Prohibition does not assign a debt owed, so a claim under § 523(a)(19) cannot survive. At first blush, it does appear that § 523(a)(19) requires the plaintiff to satisfy both subsection (A) and subsection (B). If that were the case, the plaintiff would be required to plead two elements: (1) a violation of a securities law, either state or federal, or common law fraud in connection with the sale of a security; and (2) the debt arose from some form of settlement agreement, or judicial or administrative decree. Originally read as it was drafted in the Sarbanes-Oxley Act of 2002, subsection (B) required the debt "results from . . . ," meaning that some sort of pre-petition judicial, administrative or settlement action had occurred. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.24B, [523-128] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In 2005, however, Congress amended the statute as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to "results, before, on, or after the date on which the petition was filed, from . . . ." This change expanded the temporal range for the plaintiff to receive a judgment beyond the filing of the bankruptcy petition. As the court in *In re Chan*, 355 B.R. 494, 504 (E.D. Penn. 2006) stated,

> the phrase [results, before, on, or after the date on which the petition was filed, from] was intended to make it clear that a debt arising under the federal securities laws or as a result of fraud in connection with the sale of a security may be determined nondischargeable under § 523(a)(19) even if the liability was not fixed prior to the commencement of the bankruptcy case. The additional phrase merely insures that the efficacy of the discharge exception is not dependent upon the timing of the liability determination; *i.e.,* dischargeability will not turn on whether the creditor or the debtor wins the "race to the courthouse."

6

*In re Chan*, 355 B.R. 494, 504 (E.D. Penn. 2006). *See also Mansfield v. Bastrom*, 2005 WL 1798270, *1 (W.D.Wash.2005) (holding that the BAPCPA amendment to § 523(a)(19) "eliminates the requirement of a prefiling judgment"); *In re Weilein*, 328 B.R. 553, 555 (Bankr.N.D.Iowa 2005), *reconsidering* 319 B.R. 175 (Bankr.N.D.Iowa 2004) (under pre-2005 version of § 523(a)(19), judgment, order or settlement agreement must have been in existence pre-bankruptcy for discharge exception to apply).

As discussed in the next section, the legislative history at the time of its enactment suggests that one focus of § 523(a)(19) was decrees, judgments or settlements but the more important emphasis was to "hold accountable those who violate securities laws." *See* S.Rep. No. 107-146 at 10 (2002). The BAPCPA amendment in 2005 continues that theme, but downplays the importance of having a judgment at the time the debtor files the bankruptcy petition.

  *a. The Legislative History of § 523(a)(19)*

When Congress passed the Sarbanes-Oxley Act of 2002, it contained an amendment to § 523 of the Bankruptcy Code in Title VIII of the Act. Title VIII of the Sarbanes-Oxley Act of 2002 is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "CCFA Act"). In creating the CCFA Act, Congress listed as one of its purposes: "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." S.Rep. No. 107-146, at 2 (2002). In describing the problem faced by defrauded investors, the Committee Report states:

> Current bankruptcy law may permit [securities law violators or those who commit actual fraud in connection with the sale of a security] to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to *hold accountable those who violate securities laws.*

7

*See* S.REP. NO. 107-146 at 10 (2002)(emphasis added).

One of the key components to preventing the discharge of securities law violations was Bankruptcy Code § 523(a)(19), which was Section 803 of the CCFA Act. Titled "Debts nondischargeable if incurred in violation of securities fraud laws," Senator Patrick Leahy explained that the addition of § 523(a)(19) was to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover their losses." 148 CONG. REC. S1787 (daily ed. March 12, 2002) (statement of Senator Leahy); *see also* S.REP. NO. 107-146 at 12 (2002). He continued to emphasize the need for bankruptcy reform of debts incurred from violations of securities laws in the section-by-section analysis of the bill, where he stated: "This provision [§ 523(a)(19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible."148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy).

### b. *The Effect of the 2005 BAPCPA Amendment on § 523(a)(19)*

Although the legislative history of the CCFA Act was robust, there is no legislative history of the amendment in BAPCPA. The plain text of the amendment, though, provides the Court with a clear understanding of the intent of Congress rendering the legislative history of the amendment unnecessary.[1] By amending the statute to include "before, on, or after the date on which the petition was filed," Congress furthered its goal of punishing those who commit securities-related misdeeds by expanding not only the

---

[1] "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.* 541 U.S. 246, 252 (2004)(citations omitted).

8

timing of the settlement, judgment, decree or order but also the forum in which the creditor can seek such a finding.

After the amendment to § 523(a)(19) in BAPCPA, the bankruptcy court can satisfy the requirements of either § 523(a)(19)(B)(i) or (B)(iii) by conducting a federal judicial proceeding and issuing "[a] judgment, order, consent order, or decree" or "[a] . . . court order . . . for damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor." *See* 11 U.S.C. § 523(a)(19)(B). This is the same type of determination that bankruptcy courts already make in subsections (2), (4) and (6) of § 523.

*Collier* recognized this possibility after the amendment and noted that "[a] consequence of the amendment is the possibility that the underlying federal or state securities law violation [or common law fraud . . . in connection with the sale of a security] may be tried in the bankruptcy court as part of the court's determination of dischargeability." 4 COLLIER ON BANKRUPTCY ¶ 523.24B, [523-129] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

The Court agrees with such an expanded interpretation of § 523(a)(19) and, therefore, in order to survive a motion to dismiss, a creditor must only plead sufficient allegations that the pre-petition conduct of the debtor constituted a "violation of any of the Federal Securities laws . . . any of the State securities laws, or any regulation or order issued under such Federal or State laws; or common law fraud . . . in connection with the purchase or sale of any security. . . ."

Having determined that the order or judgment required in § 523(a)(19)(B) may be entered in the instant proceeding, the only pleading requirements for Filian to survive a

9

motion to dismiss arise solely out of subsection (A). Filian must provide the Court with factual allegations that support a probable likelihood that Jansma committed a state or federal securities law violation; or common law fraud, deceit or manipulation in connection with the purchase or sale of any security.

### c. The Motion to Dismiss is Denied.

When deciding a motion to dismiss, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Viewed in this light, the allegations made by Filian offer support for a finding of non-dischargeability under § 523(a)(19). Filian's complaint properly pled common law fraud in connection with the sale of a security and a violation of the state securities laws, meeting the requirements of subsection § 523(a)(19)(A)(i) and (A)(ii).

Filian's complaint, along with the attached exhibits, contains an Illinois State Court Judgment for intentional fraud as well as an Order of Prohibition, issued by the Office of the Secretary of the State, which prevents Jansma from selling promissory notes, of the exact same type that he sold to Filian, because they were unregistered securities. Read together, the state court judgment and the order of prohibition tend to show that Jansma intentionally defrauded Filian in connection with the sale of a security.

Jansma essentially argues that the factual content of these decisions is not enough because he believes that subsection (B) is not satisfied by the state court judgment or Order of Prohibition. This argument misses the point of section *b.*, above. This court can satisfy subsection (B) of § 523(a)(19) by issuing a judgment that Jansma violated subsection (A). Therefore, Filian does not need to provide factual content that subsection (B) is satisfied.

Filian must plead sufficient "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Ginsberg*, 2009 WL 2166688 *2 (Bankr. N.D. Ill. 2009). Filian has done that through the State Court judgment and the Order of Prohibition. The persuasiveness of those decisions does not arise from their relationship to subsection (B) but to subsection (A), where Filian must show that Jansma has committed a violation of the state or federal securities laws, or common law fraud in connection with the sale of a security.

For the reasons stated above, the Court denies the motion to dismiss.

ENTERED:

Date: JAN 21 2010

PAMELA S. HOLLIS
United States Bankruptcy Judge