IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: ) | | Chapter 7 |
| Dale Lee Jansma, ) | | Case No. 09 B 7071 |
| ) | | Hon. Pamela S. Hollis |
| Debtor. ) | | |
| Ronald J. Filian ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| ) | | Adversary Proceeding |
| ) | | No. 09 A 00444 |
| Vs. ) | | |
| ) | | |
| Dale Lee Jansma, ) | | |
| ) | | |
| Defendant ) | | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of Defendant-Debtor Dale Lee Jansma ("Jansma") for summary judgment on Counts I – IV of Plaintiff Ronald J. Filian's ("Filian") complaint for non-dischargeability of certain debts. Jansma asserts in his motions that he did not knowingly misrepresent to Filian that his property was free and clear of encumbrances and the promissory note that Jansma gave Filian was not a security. He argues that the facts surrounding these issues are undisputed and summary judgment should be granted in his favor. Having reviewed the papers filed, and for the reasons stated below, the Court denies the motions for summary judgment on Counts I, II, and III, and grants summary judgment in favor of Jansma on Count IV.

### STANDARD FOR SUMMARY JUDGMENT

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings via Fed. R. Bankr. P. 7056. Summary

judgment is appropriate under Rule 56 if the moving party shows that no genuine issue of material fact exists and that it is entitled to prevail in the case as a matter of law. In ruling on the motion, the court must draw all reasonable inferences from the underlying facts in the responding party's favor. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

A factual dispute is a genuine issue for trial only if it is determinative of the outcome under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994). Once the moving party has made a *prima facie* showing that it is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings. Instead, its response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## UNDISPUTED FACTS

Pursuant to Local Bankruptcy Rule 7056-1, a party moving for summary judgment must file a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr. R. 7056-1B.

The party opposing a summary judgment motion is required by Local Bankruptcy Rule 7056-2 to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other

2

supporting materials relied upon." Local Bankr. R. 7056-2A(2)(a). Both parties complied with the requirements of Local Bankr. R. 7056.

Having read the statements of material, undisputed facts, the supporting exhibits, and reviewed the docket both in this adversary proceeding and the underlying bankruptcy case, the court relies on the following undisputed facts:

**a. The Karno Promissory Note**

On January 16, 2007, Jansma completed two transactions: 1) He acquired a piece of real estate, 3526 Lake St. Lansing, Illinois (the "Property"); and 2) He issued a promissory note to Adam Karno for $104,932.00 in exchange for $100,000.00 (the "Karno Note"). The promissory note was to mature on May 16, 2007, with interest of $4,932.00. If Jansma could not pay on May 16, then Karno would receive an additional $41.10 per day. To secure the promissory note, Jansma recorded a lien against the newly-acquired property with the Cook County Recorder of Deeds.

After missing his May 16 deadline with Karno, Jansma made a partial payment on August 24, 2007, in the amount of $50,000. His next payment would not occur for another three weeks. On September 14, 2007, Jansma paid Karno $59,614.83. On December 5, 2007, Karno executed a release of any liens he held against the property subject to his lien. Jansma waited approximately 4 months to record the release with the Recorder of Deeds on March 5, 2008.

**b. The Filian Promissory Note**

On or about October 11, 2007, Jansma requested that Plaintiff Ronald Filian loan Jansma $100,000.00. Filian agreed to personally loan Jansma the money in exchange for a promissory note secured by the Property. Jansma represented that he owned the

3

Property free and clear. Four days later, Jansma signed the promissory note and delivered it to Filian. The note called for a lump sum of principal ($100,000.00) and interest ($1,233.00) for a total of $101,233.00 due no later than November 28, 2007. The note also provided that in the event of default, Filian could recover all costs of collection, including but not limited to reasonable attorney fees, as well as a late interest penalty of $27.40 per diem.

Jansma received the $100,000.00 in two checks from Filian. The first for $70,000.00, made out to Jansma Builders, and the second for $30,000.00, made out to Dale Jansma, personally.

The promissory note matured on November 28, 2007, and Jansma failed to pay the $101,233.00. On November 29, 2007, Filian issued a written demand and notice of default. Any and all attempts to cure the default on the promissory note failed.

**c. State Judicial and Administrative Proceedings**

On January 30, 2008, Filian filed a verified complaint in the Circuit Court of Cook County, which Filian amended on July 3, 2008. The amended complaint consisted of five counts: I) Foreclosure; II) Breach of Contract; III) Breach of Express Warranty of Covenant Against Encumbrances; IV) Fraudulent Misrepresentations; and V) Violation of the Illinois Security Act. Three weeks later, Jansma filed a motion to dismiss this complaint.

Judge Delort, sitting judge in the Circuit Court of Cook County, Chancery Division, issued a memorandum opinion, in which he granted the motion to dismiss Count 5, Violation of the Illinois Security Act, and struck the remaining counts with leave to amend.

On November 20, 2008, Judge Delort entered the order which allowed Jansma's counsel to withdraw from the case. Jansma did not appear again in the case.

After Jansma failed to appear on January 12, 2009, Judge Delort entered a default judgment against him for $514,193.20 with the following findings:

> 1. The Defendant, Dale Jansma obtained money from the Plaintiff [Ronald Filian] under false pretenses, namely that the Defendant would repay the Plaintiff the sum of $107,096.60 by November 28, 2007.
>
> 2. The Defendant, Dale Jansma intentionally misrepresented to the Plaintiff that the title to the property at 3526 lake [sic] St., Lansing IL which was used as security for the loan, was free and clear of encumbrances. Accordingly, the Defendant incurred damages in the amount of $300,000.00.
>
> 3. The Defendant intentionally defrauded the Plaintiff by making false statements that the Defendant was able to repay the Plaintiff by November 28, 2007. Accordingly, the Defendant incurred damages in the amount of $300,000.00.
>
> 4. The Plaintiff reasonably relied on the Defendant's misrepresentation and intentionally fraudulent statements and was damaged as a result of that reliance.

After announcing his findings, Judge Delort ordered Jansma to pay the following amounts:

> Count II - $107,096.60, compensatory damages;
>
> Count III - $107,096.60, actual damages; and
>
> Count IV - $300,000.00, actual damages.
>
> Judgment for court costs and attorney's fees of $64,552.00 is also awarded in favor of plaintiff and against defendants.

Simultaneously, the State of Illinois, Office of the Secretary of State, initiated proceedings against Jansma for violation of the Illinois Securities Act. A Temporary Order of Prohibition was issued by the Secretary of State on January 13, 2009. After 30

days without a response from Jansma, the Secretary of State issued a Final Order of Prohibition on February 13, 2009. The Final Order of Prohibition read:

1. Respondent Dale Jansma ("Dale Jansma"), a natural person, has a last known address of 946 Old Farm Rd, Dyer, Indiana, 46311.

2. Respondent Jansma Builders Inc. ("Jansma Builders") is an Indiana Corporation and maintains a business location at 946 Old Farm Rd., Dyer, Indiana, 46311.

3. Dale Jansma offered and sold Promissory Notes of Jansma Builders to Illinois Residents in excess of one million dollars ($1,000,000.00).

4. The Promissory Notes offered and sold by Dale Jansma promised interest rates between ten (10) percent to thirty (30) percent interest per annum.

5. Dale Jansma secured the Promissory Notes with real property; however the Promissory Notes far exceeded the value of the real property.

6. Several of the Promissory Notes secured by Dale Jansma were erroneous property addresses.

7. The activities described above constitute the offer and sale of a note and therefore a security as those terms are defined in Section 2.1, 2.5 and 2.5a of the Illinois Securities law of 1953 [815 ILCS 5/1 et seq].

8. Section 5 of the Act provides, *inter alia*, that all securities except those exempt under Section 3 or those offered or sold in transactions exempt under Section 4 "shall be registered either by coordination or by qualification prior . . . to their offer or sale"

9. Respondents failed to file with the Secretary of State an application of registration of the securities described above required by the Act and as a result, the security was not registered pursuant to Sect 5 of the Act prior to its offer in the State of Illinois.

10. Section 12.A of the Act provides, *inter alia*, that it shall be a violation for any person "to offer or sell any security except in accordance with the provisions of the Act."

11. Section 12.D of the Act provides, *inter alia*, that it shall be a violation for any person "to fail to file with the Secretary of State any application, report or document required to be filed under the provisions of the Act or

6

any rule or regulation made by the Secretary of State pursuant to the Act."

12. By virtue of the foregoing, Respondents violated Sections 12.A and 12.D of the Act.

Jansma then filed for bankruptcy on March 3, 2009. Filian filed this adversary proceeding on June 3, 2009, seeking to except the default judgment entered against Jansma in the state court from discharge under 11 U.S.C. § 523(a). The adversary counts are: I) False Pretense and False Representations; II) Willful, Wanton and Malicious Behavior; III) Fraudulent Misrepresentation, and IV) Violation of the Illinois Security Act.

## CONTENTIONS OF THE PARTIES

Filian's complaint for non-dischargeability rests on two theories: 1) Jansma defrauded him by misrepresenting that he owned the Property free and clear of any encumbrances; and 2) Jansma committed a securities law violation or committed fraud in connection with the sale of a security. The legal basis for these claims of non-dischargeability are found in two subsections of Bankruptcy Code § 523 (a)(2) & (19).

As to the first claim, Filian argues that Jansma knowingly made false representations about the Property to induce him to loan the money. Filian claims that Jansma did not pay the Karno Note in full prior to making representations that the Property was free and clear of encumbrances.

Filian actually suggests that Jansma did not make the payments in satisfaction of the loan at all, as there is no indication on the checks that they were given to Karno in order to satisfy the Karno Note. Also, Jansma owed Karno $109,905.10, yet he paid Karno with two checks totaling $109,614.83, an unlikely amount with a fixed per diem late charge. In addition to the incorrect amount paid—Filian points out that Jansma did

not get a release from Karno until December and did not record the release until March 2008, nearly four months after getting the release and seven months after allegedly paying off the loan.

As evidence of Jansma's guilt, Filian offers the state court default judgment issued by Judge Delort and claims that it collaterally estops Jansma from retrying these facts here.

In response, and as the basis for this summary judgment motion, Jansma argues that he did not knowingly make any false representations to Filian and that the state court judgment is a default judgment and, therefore, not entitled to collateral estoppel effect in this court.

Jansma states that he believed his payments to Karno meant that no encumbrance existed on the property, claiming that the debt no longer existed because he paid Karno in full. As to the amount Jansma paid Karno, Jansma argues that the difference in the amount owed and the amount paid is, at best, trivial and does not rise to the level of a material fact in dispute.

Jansma does admit that failing to initially obtain a release from Karno may have left a technical encumbrance on the property; although, his belief was that the Property was no longer encumbered. According to Jansma, this means he did not *knowingly* make a false representation. Jansma also contends that his failure to obtain and record a release from Karno would not have affected Filian's ability to collect in full. Had Filian attempted to foreclose on the property, Jansma claims, the value of the property would have exceeded the value of his note.

In regards to the § 523(a)(19) claim, Filian relies largely on the Secretary of State's Final Order of Prohibition against Jansma. The Secretary of State bars Jansma from offering promissory notes of the type at issue here for failure to register them as securities with the State. Filian also argues, for the first time in his reply to the summary judgment motion, that Jansma has committed common law fraud in connection with the sale of a security.

Jansma responds by noting that Filian raised a similar claim in the state court action, which Judge Delort dismissed: Count V of the First Amended Complaint, Violation of the Illinois Securities Act. Jansma argues that collateral estoppel should bar the relitigation of this claim. As for the Secretary of State's Final Order of Prohibition, Jansma argues that it is akin to a default judgment and, therefore, is not entitled to any weight here.

## CONCLUSIONS OF LAW

When deciding a motion for summary judgment, the Court must determine whether the movant has proven there is no genuine issue of fact for trial. *In re Werner*, 386 B.R. 684, 694 (Bankr. N.D. Ill. 2008).

Although there are four counts listed in the complaint, the Court, as a housekeeping matter, recognizes them under their appropriate subsection of 523. The Court condenses Filian's Counts I and III in this adversary proceeding and refers to them as the § 523(a)(2)(A) claim because both counts fall within the purview of § 523(a)(2) (fraud and fraudulent misrepresentation). For the same reason, Count II is referred to as the § 523(a)(6) claim (willful and malicious injury), and Count IV is referred to as the § 523(a)(19) claim (securities violations).

To succeed on his motion for summary judgment, Jansma must prove that Filian has not met his burden of proof under § 523(a)(2)(A), (a)(6), or (a)(19) and no material facts are in dispute. As discussed below, because there are material facts in dispute, the Court must deny the motion for summary judgment as to Counts I, II, and III but grants the motion as to Count IV.

**a. The § 523(a)(6) Claim**

As neither party specifically addresses the § 523(a)(6) claim, the Court will not discuss it here. The Court denies summary judgment as to this claim because the movant, Jansma, has not proven there are no material questions of fact in dispute regarding this claim.

**b. The § 523(a)(2)(A) Claim**

Section 523(a)(2)(A) requires the creditor to show that the debtor obtained the debt "by false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2). The burden falls on the creditor to prove, by a preponderance of the evidence, three elements: (1) The debtor made a misrepresentation or omission; (2) that the debtor knew was false or was made with such disregard as to be reckless; (3) upon which the creditor justifiably relied to her detriment. *See Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Field v. Mans*, 516 U.S. 59 (1995). If the creditor can prove these three elements, the debt owed is not discharged by the bankruptcy.

The burden here, however, rests with Jansma as the movant for summary judgment to prove that none of the material facts are in question. He argues that Filian cannot prove these elements because he did not *knowingly* misrepresent to Filian that the Property was free and clear of encumbrances, believing that payment in full to Karno

removed any encumbrance on the Property. The Court, though, is unable to make a determination if Jansma's representations were knowingly false or made with good-faith because there are factual questions concerning the Karno transaction, which are important to the abovementioned elements.

*1. Material Questions of Fact Exist as to Whether Jansma Knowingly Misrepresented to Filian that the Property was Free and Clear of Encumbrances.*

Filian argues that Jansma's failure to obtain a release from Karno at the time he allegedly paid off the Karno Note raises a question as to whether the Property really was unencumbered. Jansma offered no explanation why he failed to get the release; merely that he forgot to do so. Filian further asserts that Jansma knew the importance of filing documents with the Recorder of Deeds, as he recorded the Filian Note, Karno Note and several other notes. Additionally, Jansma did not record the release for months after the alleged payment of the Karno Note.

Filian also questions whether the Karno Note was really paid off, since the checks given to Karno—allegedly in satisfaction of the Karno Note—do not indicate that Jansma made the payments for such a purpose. Also, the release obtained belatedly from Karno makes no mention of the previous payments made by Jansma at all. The language of the release indicates that Jansma paid Karno $10 for the release, with no indication of any previous debt satisfaction. Additionally, under the terms of the Karno Note, Jansma and Karno agreed that Jansma would pay a fixed amount on the loan and a per diem for every day it was late. The amount paid was not only less than the amount owed to Karno; it was an amount that was incalculable based on the figures provided for in the Promissory Note. Broken down as a simple math problem, Jansma contracted to pay $104,932.00 and $41.10 for every day after May 16, both of which end in an even number: $.00 and $.10.

11

No matter how many days late Jansma was in making his payment to Karno, the amount owed could not add up to an odd number: $.83.

As the Court must draw all reasonable inferences in favor of the responding party, and in light of the other surrounding facts in question, the Court cannot determine Jansma's state of mind at the time he told Filian that the Property was free and clear of encumbrances, or if he paid off the Karno Note when he made payments to Karno. Therefore, the Court finds that summary judgment is inappropriate at this time.

Although Filian will be permitted to proceed at this stage, it is unlikely that Filian will meet his ultimate burden by merely offering the default orders as proof of Jansma's state of mind. Based on what the Court has learned so far, collateral estoppel would not be appropriate as the matters surrounding the Property, payoff of the Karno Note, and release, were not actually litigated. In some of Filian's papers, it is argued that Jansma had the opportunity to litigate, so he should be collaterally estopped. "Opportunity" to raise a claim or defense generally applies to res judicata or claim preclusion. On the other hand, collateral estoppel requires actual litigation of the issues sought to be used against a party. Accordingly, Filian should be prepared to present specific evidence in support of his dischargeability claims.

Additionally, it appears to the Court that regardless of what Jansma stated or intended, the Property was no longer encumbered by the Karno obligation after the Karno release was obtained. Filian fails to explain why he has not sought to modify the stay and foreclose on the Property to satisfy his debt, or exactly how Jansma's statements are connected or causally related to Filian's failure to have his debt satisfied from the Property.

**c. The 523(a)(19) Claim.**

The Court previously recognized that the congressional intent of this section was to help defrauded investors recoup their losses and hold accountable those who violate the securities laws. See *In re Jansma*, No. 09 AP 00444 2010 WL 282511, at *5 (Bankr. N.D. Ill. Jan. 21, 2010). Although the normal rules of statutory construction and interpretation of Bankruptcy Code § 523 guide the Court to construe exceptions to discharge narrowly,[1] Congress uses the word any—as a form of inclusion—*eight times* in § 523(a)(19).

Specifically, § 523(a)(19)(A) disallows a discharge for a debt that

> (A) is for--
> (i) the violation of *any* of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), *any* of the State securities laws, or *any* regulation or order issued under such Federal or State securities laws; or
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of *any* security; and
> (B) results, before, on, or after the date on which the petition was filed, from--
> (i) *any* judgment, order, consent order, or decree entered in *any* Federal or State judicial or administrative proceeding;
> (ii) *any* settlement agreement entered into by the debtor; or
> (iii) *any* court or administrative order for *any* damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19)(*emphasis added*).

Under § 523(a)(19)(A), Congress included a wide range of debts related to securities violations, including: Federal and State securities law violations, of any type; violations of regulations or orders issued under those laws; and common law fraud not covered by state or federal securities laws. Under § 523(a)(19)(B), as this Court

---

[1] See *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir. 2004); *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998).

established previously in a lengthy discussion of the Congressional intent of this section in *Jansma* at *4-5, this adversary proceeding could serve to satisfy subsection B. Any damages awarded to Filian in this adversary proceeding would constitute a debt that "results, before, on, or after the date on which the petition is filed, from--any judgment, order, consent order or decree entered in any Federal or State judicial or administrative proceeding." 11 U.S.C. § 523(a)(19)(B)(i).

Jansma argues that Judge Delort's dismissal of Count V in the first amended complaint should serve to collaterally estop Filian from pursuing a securities law violation here. In response, Filian claims that Jansma fails to mention that after Judge Delort ruled, the Secretary of State issued the Order of Prohibition, which would constitute a violation of the Illinois Securities Act.

Judge Delort's decision dismissing Count V, however, specifically held that Jansma's note to Filian did not violate Illinois securities laws, and that Jansma was not required to register the note with the Secretary of State. His opinion states that the parties fully briefed the matter and his dismissal did not give leave to amend the securities count. Filian's Count IV in the adversary pending here merely repeats the registration allegations decided against him by the state court.

It is well established that collateral estoppel can apply in non-dischargeability proceedings. *See Grogan v. Garner*, 498 U.S. 279, 284-86 (1991) (In establishing the preponderance of the evidence standard for § 523, the Supreme Court recognized that bankruptcy courts could apply collateral estoppel in adversary proceedings under § 523). When a federal court gives collateral estoppel effect to a state court's determinations, 28 U.S.C. § 1738 requires the federal courts, including the bankruptcy courts, to apply

14

collateral estoppel as the courts of that state would apply it. *See In re Catt*, 368 F.3d 789, 791 (7th Cir. 2004). The Court, then, must look to Illinois law to determine the threshold requirements for collateral estoppel in this case. Illinois law has three requirements for collateral estoppel to apply:

> 1) The issue decided in the prior adjudication is identical with the one presented in the suit in question; 2) There was a final judgment on the merits in the prior adjudication; and 3) The party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Herzog v. Lexington Township*, 657 N.E.2d 926, 929-30 (Ill. 1995).

All of these requirements are satisfied in this case. The issue in the prior adjudication is identical: whether Illinois securities laws were violated by failure to register the Filian note. Judge Delort cited to *Boatmen's Bank of Benton v. Durham*, 203 Ill. App. 3d 921, 927 (5th Dist. 1990), to determine if a security was involved in the transaction between Jansma and Filian. The test announced in *Boatmen's Bank* states that "[t]he substance of the transaction, the relationship between the parties, and economic reality determine whether a transaction involves a security and whether a purchaser is entitled to protection afforded by registering or reporting an instrument pursuant to securities laws." *Boatmen's Bank*, 203 Ill. App. 3d at 927. Judge Delort concluded that a security was not involved in the transaction between Filian and Jansma, finding that Filian was more like a lender and not an investor looking for a profit from Jansma's real estate development projects. He dismissed the securities violation count without leave to amend. Judge Delort permitted Filian to amend on the other counts, which ultimately produced the judgment against Jansma that Filian is attempting to except from discharge. Hence, Judge Delort's ruling became final, meeting the second requirement for collateral

estoppel. The third test of privity is clearly met since the parties in both actions were identical.

Filian's reliance on the Secretary of State's Order of Prohibition cannot defeat the application of collateral estoppel to Count IV. Filian asserts that the Secretary of State's Order is proof that Jansma sold him a security that was not registered. Significantly, however, that order does not even mention, much less specify, Filian's Note as one of the unregistered securities, nor has Filian offered in evidence the record considered by the Secretary of State. Filian merely relies on the general pronouncement that Jansma sold unregistered securities and asks the Court to connect the dots to this case. In view of Judge Delort's specific ruling that the transaction between Filian and Jansma did not involve a security, the Court will not make that leap.

Moreover, the Order of Prohibition was issued on a provisional basis, one day after Judge Delort's judgment against Jansma. It became final thirty days later, in part, because Jansma apparently did not contest it. When Jansma actually defended Filian's allegations of security violations in state court, he won. The specific must prevail over the general. The general prohibition order from an agency cannot upset a court's specific ruling that the Filian-Jansma loan did not involve a security. Accordingly, Jansma's failure to register the Filian loan documents with the Secretary of State cannot be a violation of Illinois securities laws which would support a § 523(a)(19) claim. Summary judgment as to the § 523(a)(19) claim is granted in favor of Jansma and against Filian.

16

## CONCLUSION

For the aforementioned reasons, summary judgment is denied as to Counts I, II, and III. Summary judgment is granted as to Count IV in favor of Jansma and against Filian.

Date: JUL - 8 2010

PAMELA S. HOLLIS
United States Bankruptcy Judge