## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 09 B 07071 |
| | ) | Chapter 7 |
| DALE LEE JANSMA, | ) | Judge Pamela S. Hollis |
| Debtor, | ) | |
| | ) | |
| RONALD J. FILIAN | ) | |
| | ) | Adversary No. 09 A 00444 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DALE LEE JANSMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the Adversary Complaint of Ronald J. Filian ("Filian") against debtor, Dale Lee Jansma ("Jansma") seeking to except his debt from discharge in Jansma's Chapter 7 bankruptcy pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6). After a trial on the merits, and for the reasons stated below, judgment is entered in favor of defendant Jansma on all counts.

## JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## FACTS AND BACKGROUND

After a trial on the merits, the court found the following facts. Jansma was the president and registered agent for his business, Jansma Builders, Inc. ("Jansma Builders"). Filian, a licensed real estate broker and consultant with Chicago Business Consultant Group Inc.

("CBCG"), had a business relationship with Jansma through CBCG as well as a personal business relationship.

Jansma purchased property commonly known as 3526 Lake Street, Lansing, Illinois ("Lake Street Property") for approximately $83,000 at a foreclosure sale in January 2007. On August 21, 2007, Jansma contacted Filian and requested that Filian personally lend him money on a short term basis. Filian responded, asking about the purpose of the loan. Jansma explained that his money was currently tied up and that other investors were unable to provide additional capital. Jansma said he needed the money to continue with his business ventures. The parties did not enter into an agreement with respect to the August 21st request.

On October 11, 2007, Jansma made a similar request for $100,000. The parties spoke in person and discussed how the money would be put to use. Jansma represented that the money would be used to finish work on a property in Crown Point. Jansma told Filian that the Crown Point property was to be finished and delivered by November 16, 2007. On October 15, 2007, Jansma presented Filian with a promissory note ("Filian Note") whereby Jansma promised to pay Filian $100,000 with simple interest in the amount of $1,233 in a lump sum payment due no later than November 28, 2007. Interest was calculated at 10% annual and upon default, Filian was entitled to recover costs of collection including, but not limited to, reasonable attorney's fees.

The Filian Note was secured by the Lake Street Property. The Filian Note described the property as:

> PIN # 30-32-123-021-0000
> LOT 13 and 14, IN BLOCK 3 IN FIRST ADDITION TO WENTWORTH
> MANOR, BEING A SUBDIVISION OF THE SOUTH 1130.6 FEET OF THE
> EAST 1/2 OF THE NORTHWEST ¼ OF SECTION 32, TOWNSHIP 35
> NORTH, RANGE 15 EAST OF THE THIRD MERIDIAN, IN COOK COUNTY
> ILLINOIS (EXCEPT THE PART LYING SOUTH OF THE CENTERLINE OF
> LAKE STREET IN VILLAGE OF LANSING) ACCORDING TO THE PLAT

THEREOF RECORDED APRIL 7, 1926 AS DOCUMENT 9232216 IN COOK COUNTY ILLINOIS.

The Filian Note was signed by Filian and Jansma, both in his capacity as president of Jansma Builders and in his individual capacity.

Jansma represented to Filian that the Lake Street Property was worth $150,000 and that he was offering that property as collateral for the Filian Note because it was the only property he owned free and clear of any liens or encumbrances of his investors. Jansma never made any representations with regard to taxes or mechanics liens and never told Filian that there was another promissory note recorded against the Lake Street Property.

Filian loaned $100,000 to Jansma in two installments. On October 15, 2007, Filian wrote Jansma Builders a check for $70,000 and another for $30,000 on November 9, 2007. Jansma failed to repay Filian's Note on the maturity date, November 28, 2007. On November 29, 2007, Filian tendered to Jansma a written notice of default and demand for payment. Through various conversations after the default, Jansma indicated that he planned to refinance the Lake Street Property and repay Filian from the proceeds. Jansma was subsequently unable to refinance the property, however.

After repeated attempts to collect on the Filian Note, Filian notified his attorney to send the matter to collections on January 11, 2008. During a title search, Filian's attorney discovered a promissory note held by mortgage broker Adam Karno ("Karno Note") containing PIN # 30-32-123-021-0000 recorded on the Lake Street Property prior to Filian's Note. Filian's attorney also discovered unpaid taxes on the Lake Street Property from 2007 and 2008.

The Karno Note was in the amount of $100,000, signed on January 16, 2007, with a maturity date of May 16, 2007, at 15% annual interest. If Jansma were to pay early or default, the interest would be calculated to satisfy both parties at $41.10 per diem. Jansma defaulted on the

Karno Note, but eventually paid $50,000 to Adam Karno on August 24, 2007, and $59,614.83 on

September 14, 2007, for a total of $109,614.83. Karno agreed that this amount satisfied the debt.

Jansma obtained a release of the Karno Note, dated December 5, 2007. It was recorded

on March 5, 2008 and contained PIN # 30-32-123-021-0000 and 30-32-123-022. At the time

Jansma represented to Filian that the Lake Street Property was free and clear of any liens or

encumbrances from investors, he believed it to be true. He did not believe his failure to record a

release of the lien was material. Filian never contacted Jansma about the Karno Note or the

unpaid taxes and does not know if his attorney contacted Jansma about them.

Jansma communicated with Filian's attorney in attempt to get the Filian Note paid so as

to prevent a lawsuit. Those attempts were unsuccessful. At trial, Filian admitted that even if the

Karno Note had been released the day before he signed the Filian Note the same damages would

have occurred.

On January 30, 2008, Filian filed a complaint against Jansma in the Circuit Court of

Cook County. On January 12, 2009, the Circuit Court entered a default judgment against Jansma

in the amount of $514,193.20.

## DISCUSSION

There are three counts at issue: I) False Pretense and False Representation; II) Willful,

Wanton and Malicious Behavior, and III) Fraudulent Misrepresentation. Count IV was decided

against Filian on Jansma's motion for summary judgment. Although there are three remaining

counts, the court recognizes them under their appropriate subsections of § 523. The court

condenses Counts I and III in this adversary proceeding and refers to them as the § 523(a)(2)(A)

claim because both counts fall within the purview of § 523(a)(2)(A) (fraud and fraudulent

representation). For the same reason, Count II is referred to as the § 523(a)(6) claim (willful and malicious injury).

## I.      Section 523(a)(2)(A)

Counts I and III of the Adversary Complaint allege Jansma made false and fraudulent representations with regard to the Lake Street Property. Section 523(a)(2)(A) requires the creditor to show that the debtor obtained the debt by "false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A). The burden falls on the creditor to prove, by a preponderance of the evidence, three elements: (1) the debtor made a false representation or omission, (2) that he knew was false or was made with reckless disregard for the truth and the representation or omission was made with the intent to deceive, (3) upon which the creditor justifiably relied to his detriment. *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002).

Prior to executing the Filian Note, Jansma represented to Filian that the Lake Street Property was unencumbered by the liens of other investors. However, the Karno Note was still recorded against the Lake Street Property, although Jansma considered the Karno Note satisfied. Jansma did not pay the Karno Note in full until September 14, 2007, 121 days late. Total payments to Karno as of September 14, 2007, were $109,614.83. Under no set of calculations did this court come up with the amount paid by Jansma. If one does not account for the $50,000 payment on August 24, 2007, and relies solely on the $41.10 per diem cost to calculate the interest, the total due would have been $109,905.10. However, the Karno Note explains that the $41.10 per diem cost is calculated based on 15% annual interest. Therefore, the better approach

5

is to account for the $50,000 payment and recalculate the per diem cost of interest. By this method, Jansma actually overpaid Karno.[1]

Karno's debt was extinguished on September 14, 2007, when Jansma paid the Karno Note in full. Under Illinois law "[t]he two essential elements of a mortgage in Illinois are a 'debt, legal liability, or obligation to be secured and a conveyance with an intention to secure that debt or obligation.'" *Peterson v. Berg (In re Berg)*, 387 B.R. 524, 559 (Bankr. N.D. Ill. 2008) (quoting *In re Pak Builders*, 284 B.R. 650, 663 (Bankr. C.D. Ill. 2002)). It follows that if there is no longer an underlying debt, there is no valid lien. *See Markus v. Chicago Title & Trust Co.*, 27 N.E.2d 463, 465 (Ill. 1940), *overruled on other grounds by*, *ABN AMRO Mortg. Group, Inc. v. McGahan*, 931 N.E.2d 1190 (Ill. 2010).

Because Jansma fully satisfied his obligation under the Karno Note, there was no longer an underlying debt, thereby extinguishing Karno's lien on the Lake Street Property. Since Karno's lien was extinguished on September 14, 2007, Jansma's later statement to Filian that the Lake Street Property was free and clear of any liens or encumbrances was not a false or fraudulent representation; it was true.

Even if Jansma's representations to Filian had been untrue, there was no evidence to suggest that Jansma made the representations knowing them to be false or with reckless disregard for the truth. When Jansma told Filian that the Lake Street Property was free and clear of any liens or encumbrances from other investors he believed it to be true since he and Karno understood the debt to have been fully satisfied. Jansma did not believe that obtaining and

---

[1] Accrued interest as of September 14, 2007 consisted of the initial $4932 called for by the Karno Note and $41.10 per diem from May 17, 2007, to August 24, 2007 ($4932 + $4110 = $9042). Interest would then be reduced appropriately from August 25, 2007 to September 14, 2007, calculated as (15%/365 days)(21 days)($59,042) + $59,042= $59,551.54. Therefore, the total payments to Karno should have been $109,551.54.

recording a release would make a difference since there was no longer an underlying debt. Filian produced no evidence to indicate otherwise.

Furthermore, it cannot be said that Filian justifiably relied on Jansma's representation to his detriment. Filian is a licensed real estate broker. He must know the importance of running a title search before entering into a mortgage. Had Filian run a title search, he would have easily discovered the Karno Note, questioned Jansma about it, and ascertained that Karno's debt had already been paid. Notably, Filian testified that the Karno Note made no difference on the amount of damages he suffered. Filian testified that even if Karno's release had been recorded the day prior to the execution of the Filian Note, he would have sustained the same damages.

Filian also contends that Jansma falsely claimed the Lake Street Property was worth $150,000, when in reality Jansma had purchased it for only $83,000. Filian fails to recognize that the Lake Street Property was purchased at a foreclosure sale which typically yields below-market prices. Filian failed to provide any alternative evidence which would indicate the Lake Street Property was valued substantially lower than $150,000. As such, the court cannot conclude that this representation was false.

Finally, Filian argues that because the release contained both PIN numbers for the Lake Street Property that it obviously was not signed until after December 5, 2007, since Jansma testified that he did not become aware of the existence of both PIN numbers until the start of the legal proceedings in state court. Filian has not provided a citation to the record to support this alleged statement and it could not be found in the court's notes. Regardless, the court need not address this allegation in the context of the § 523(a)(2)(A) claim as any alleged misconduct occurred *after* the representations were made and, as discussed above, the Karno Note was paid in full at the time Jansma made the representations.

Accordingly, the court finds in favor of Jansma on Counts I and III.

## II.    Section 523(a)(6)

The court next turns to Count II of Filian's Adversary Complaint, alleging willful and malicious injury. Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity[.]" 11 U.S.C. § 523(a)(6). One must prove by a preponderance of the evidence that (1) the debtor intended to and caused an injury to the creditor or his property interest; (2) the debtor acted willfully; and (3) the debtor's actions were malicious. *Colemichael Inv. L.L.C. v. Burke (In re Burke)*, 398 B.R. 608, 625 (Bankr. N.D. Ill. 2008). Whether one's actions are willful and malicious must be inferred from the circumstances surrounding the injury. *Burke*, 398 B.R. at 626 (citing *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002)).

The Supreme Court has explained that the word "willful" modifies the word "injury," requiring a deliberate or intentional injury for nondischargeability, not just a deliberate or intentional act resulting in injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). This standard is interpreted to mean that the injury itself must be deliberate or intentional. *Lazzara*, 287 B.R. at 723. Injury is defined as "the violation of another's legal right or the infliction of an actionable wrong." *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 757 (Bankr. N.D. Ill. 2010) (citing *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)). Malicious is understood to mean "'in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.'" *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

8

The injury suffered here is Filian's failure to be paid and the legal costs incurred in attempting to collect on the Filian Note. For the injury to have been willful, Jansma must have intended not to repay Filian. There is no evidence to suggest that Jansma intended never to repay Filian. Jansma attempted to refinance the Lake Street Property, but those attempts failed. Jansma was also in contact with Filian and, later, Filian's attorney in an attempt to pay the Filian Note and prevent it from being sent to collections. These attempts failed as well. Albeit unsuccessful, Jansma's actions indicated intent to repay Filian.

Nor was the injury malicious. The injury suffered here is Filian's failure to be paid. The evidence indicated that Jansma had liquidity problems and that he tried repeatedly to come to an agreement with Filian to prevent the Filian Note from being sent to collections. Without more, a failure to be paid is not sufficient to constitute a malicious injury. *See Koplin v. Ginsburg (In re Ginsburg)*, No. 09 A 188, 2009 WL 4891815, at *8 (Bankr. N.D. Ill. Dec. 16, 2009) ("But if this court were to conclude that failure to pay a debt constitutes a malicious injury, than every debtor who does not repay his creditors 100 cents on the dollar has maliciously injured those creditors.") Filian did not establish that Jansma acted maliciously in failing to repay the Filian Note.

Filian failed to prove willful and malicious injury by a preponderance of the evidence. Therefore, the court finds in favor of Jansma on Count II.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of defendant Jansma on all counts.

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order will be issued pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____ JAN 27 2011 _____        _____
                                         PAMELA S. HOLLIS
                                         United States Bankruptcy Judge